IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTOPHER J. BARNETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 23-CV-0232-GKF-JFJ |
| | ) |
| CARRIE BRIDGES, Warden, | ) |
| CHARLES PHILLIPS, Captain, | ) |
| TRACIE ADAMS, Mail Room Supervisor, | ) |
| JODY MILLER, Law Library Supervisor, | ) |
| KATRENA DAVIS, Law Library Clerk, | ) |
| KEVIN HODGSON, Captain, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Before the Court is the motion to dismiss (Dkt. 52) filed by Defendants Carrie Bridges, Charles Phillips, Tracie Adams, Jody Miller, Katrena Davis, and Kevin Hodgson (collectively, "Defendants"). Defendants move, under Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff Christopher J. Barnett's amended complaint (Dkt. 24), asserting that: (1) Barnett failed to exhaust available administrative remedies, as required by 42 U.S.C. § 1997e(a); (2) Barnett fails to state any claims on which relief may be granted; (3) Defendants are entitled to qualified immunity, to the extent Barnett asserts any individual capacity claims; and (4) Defendants are immune from a suit for monetary damages, to the extent Barnett asserts any official capacity claims. Defendants also ask the Court to award them reasonable attorney's fees, under 42 U.S.C. § 1988(b), as a sanction against Barnett for filing a frivolous and vexatious lawsuit. Barnett responded in opposition to the motion (Dkt. 58), and Defendants replied (Dkt. 59).

Because Defendants' exhaustion argument requires this Court to consider materials outside of the pleadings, the Court will treat the motion to dismiss, in part, as a motion for summary

judgment under Federal Rule of Civil Procedure 56, on the issue of exhaustion. *See* Fed. R. Civ. P. 12(d) (providing that Rule 12(b)(6) motion must be treated as motion for summary judgment when "matters outside the pleadings are presented to and not excluded by the court").[1] On the record presented,[2] the Court finds no genuine issue for trial regarding Defendants' affirmative defense that Barnett failed to exhaust available administrative remedies. The Court thus grants Defendants' motion, in part, and enters summary judgment in favor of Defendants as to the affirmative defense that 42 U.S.C. § 1997e(a)'s exhaustion requirement bars relief as to all claims in the amended complaint. The Court denies as moot Defendants' motion, in part, as to all other arguments for dismissal. Lastly, because dismissal of this civil action is a sufficient sanction, the Court denies Defendants' motion, in part, as to the request for attorney's fees.

---

[1] As directed by the Court, the Oklahoma Department of Corrections ("ODOC") investigated the allegations in the amended complaint and filed a special report. Dkt. 52; *see Martinez v. Aaron*, 570 F.2d 317, 318-19 (10th Cir. 1978). Thereafter, the Court granted Barnett additional time to respond to the dismissal motion, notified Barnett that the Court may convert the motion to dismiss into a motion for summary judgment as to the issue of exhaustion, and advised Barnett that he must include with his response "any materials he deems relevant to his efforts to exhaust administrative remedies as to the claims he asserts in the amended complaint." Dkt. 56 at 3; *see* Fed. R. Civ. P. 12(d) (requiring courts to provide parties "reasonable opportunity to present all the material that is pertinent to the motion"); *Gee v. Pacheco*, 627 F.3d 1178, 1186-87 (10th Cir. 2010) (discussing notice required when district court converts Rule 12(b)(6) motion to summary judgment motion). Barnett included with his response materials that are relevant to the exhaustion issue. Dkt. 58.

[2] For purposes of summary judgment, the Court will treat Barnett's verified amended complaint (Dkt. 24) and the special report (Dkt. 51) as affidavits, to the extent the statements therein meet the requirements set forth in Fed. R. Civ. P. 56(c)(4). *See Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) ("On summary judgment, a *Martinez* report is treated like an affidavit, and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence."); *Conaway v. Smith*, 853 F.2d 789, 792 (10th Cir. 1988) (discussing treatment of verified complaint as affidavit); *see* Fed. R. Civ. P. 56(c)(4) (providing that an affidavit must "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify to the matters stated therein"). In addition, because Barnett appears without counsel, the Court liberally construes the amended complaint. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

I.  **Summary judgment standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "dispute about a material fact is 'genuine' when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At the summary judgment stage, the court's task "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). When a defendant asserts an affirmative defense in a motion for summary judgment, the defendant "'must demonstrate that no disputed material fact exists regarding the affirmative defense asserted' when the evidence is viewed in the light most favorable to the plaintiff." *Kramer v. Wasatch Cnty. Sheriff's Off.*, 743 F.3d 726, 746 (10th Cir. 2014) (quoting *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011)). "If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). If the plaintiff fails to make this showing, "the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." *Id.*

II. **Discussion**

Barnett alleges Defendants violated his constitutional rights while he was incarcerated at the James Crabtree Correctional Center ("JCCC") in Helena, Oklahoma. Dkt. 24, generally. Barnett identifies six defendants, all of whom are JCCC officials or employees, purports to sue all defendants in their individual and official capacities, and seeks declaratory and injunctive relief

and monetary damages. *Id.* at 2-3, 10-11.[3]  Barnett appears to assert three claims.[4]  First, he claims Bridges and Hodgson violated his First Amendment right to free speech on May 29, 2023, by reprimanding him for the content of emails he sent from prison to a friend on May 25, 2023, and threatening him with disciplinary sanctions for expressing his personal opinions about Adams in the emails. Dkt. 24, at 14-18. Second, he claims Bridges, Adams, Miller, and Davis violated his constitutional right to access the courts, in May and August 2023, by (1) opening, reading, or otherwise mishandling legal mail he addressed to state and federal courts and his former attorney; (2) limiting his access to the law library and his use of library computers; and (3) limiting his access to his own legal materials, including electronic discovery that he needed to review for a state criminal proceeding wherein he was serving as his own defense attorney. *Id.* at 13-21, 23-25. Third, he claims all Defendants violated the First Amendment by retaliating against him for exercising his right to free speech, filing prison grievances, accessing the courts, and filing a complaint against Adams, under the Prison Rape Elimination Act ("PREA"), for alleged sexual harassment. *Id.* at 14-17, 19-20, 23-25.

Defendants seek summary judgment, in part, as to their affirmative defense that Barnett failed to exhaust available administrative remedies before filing this civil action, as required by 42 U.S.C. § 1997e(a), a provision of the Prison Litigation Reform Act ("PLRA"). Dkt. 52 at 3-7. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other

---

[3] For consistency, the Court's citations refer to the CM/ECF pagination.

[4] Barnett's allegations are disorganized, and his claims are not well-defined. The Court has liberally construed his amended complaint to discern his claims. Further, in accordance with Barnett's clarification that he mistakenly identified Defendant Hodgson as Defendant Phillips, *see* Dkt. 24 at 12; Dkt. 58 at 2, the Court reads all allegations and claims that refer to Phillips as instead referring to Hodgson.

correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[5]  "[T]he PLRA exhaustion requirement requires proper exhaustion," including "compliance with [the prison's] deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006).  The prisoner must use "all steps that the [prison] holds out, and [do] so *properly*." *Id.* at 90 (emphasis in original) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  Under the PLRA, "[a]n inmate who begins the grievance process but does not complete it is barred from pursuing [his] § 1983 claim" in federal court. *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (quoting *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)).  "Once a defendant proves that a plaintiff failed to exhaust [his administrative remedies], . . . the onus falls on the plaintiff to show that remedies were unavailable to him." *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011).  "Administrative remedies are deemed unavailable if, among other things, 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *May*, 929 F.3d at 1234 (quoting *Ross v. Blake*, 578 U.S. 632, 644 (2016)); *see also Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) (stating that "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust").

---

[5] The PLRA's exhaustion requirement applies if the plaintiff is a prisoner at the time of the filing of the lawsuit, *May v. Segovia*, 929 F.3d 1223, 1228 (10th Cir. 2019), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002). Barnett was incarcerated at the JCCC when he commenced this action and when he filed the amended complaint. Dkt. 1 at 2; Dkt. 24 at 41. He presently is incarcerated at the Allen Gamble Correctional Center ("AGCC") in Holdenville, Oklahoma. Dkt. 82. Because the undisputed facts show that Barnett was a "prisoner" within the meaning of the PLRA when he filed his original and amended complaints and, further, that this lawsuit is clearly about "prison life," there is no genuine dispute as to whether the PLRA's exhaustion requirement applies. *May*, 929 F.3d at 1227-28; *Nussle*, 534 U.S. at 524, 532.

It is undisputed that the ODOC has a written policy (OP-090124) governing the "Inmate/Offender Grievance Process." Dkt. 51-24. That process first requires a prisoner to seek informal resolution of an issue through a conversation with staff and, if the conversation does not resolve the issue, through submission of a written Request to Staff ("RTS") within seven days of the incident at issue. *Id.* at 4-11. If the informal resolution process fails to resolve the issue, the prisoner may file a written grievance with the proper reviewing authority no later than fifteen days after receipt of the response to his RTS, or, if the prisoner received no response, by filing a written grievance with the reviewing authority to "address the issue of the lack of response to the [RTS]." *Id.* at 9-15. If the prisoner is dissatisfied with the reviewing authority's response to a grievance, the prisoner may file a grievance appeal with the Administrative Reviewing Authority ("ARA") within fifteen days of receipt of the response. *Id.* at 14-15. If the reviewing authority does not respond to the grievance, the prisoner may file a grievance with the ARA "to grieve only the issue that [he] did not receive a response from the reviewing authority." *Id.* at 13. "If the ARA determines that the grievance needs further investigation or review by the reviewing authority, the grievance may be returned to the reviewing authority for further investigation and for an amended response." *Id.* at 17. A prisoner exhausts the grievance process by obtaining a ruling from the ARA. *See id.* at 18 ("The ruling of the ARA is final and will conclude the internal administrative process."). At each level of the grievance process, the policy requires the prisoner to comply with timing, form, and substance requirements as identified in the policy. *Id.*, generally.

Defendants submitted evidence showing that Barnett submitted multiple RTSs in 2023, that he filed four grievances in 2023 (JCCC 23-24, JCCC 23-41, JCCC 23-64, JCCC 23-68), and that he filed one grievance appeal in 2023 (ARA 23-181). Dkts. 51-25 through 51-32; Dkt. 51-33 at 2-17. The reviewing authority, Bridges, returned unanswered three grievances (JCCC 23-24,

6

JCCC 23-41, JCCC 23-68) because Barnett did not properly submit them. Dkt. 51-25 at 2; Dkt. 51-27 at 2; Dkt. 51-29, at 2. In August 2023, Bridges issued a grievance decision partially granting relief based on Barnett's grievance in JCCC 23-64, permitting him additional time in the law library. Dkt. 51-28 at 2. Defendants submitted an affidavit from the manager of the ARA, attesting that Barnett did not properly file the grievance appeal he submitted in August 2023, in ARA 23-181, was twice told that he "must properly address his issues with the reviewing authority through the inmate grievance process" before filing a grievance appeal, and did not "exhaust his administrative remedies regarding any issues with the ARA." Dkt. 51-31 at 2. Barnett submitted evidence confirming that he filed multiple RTSs in 2023, that he filed two grievances and received partial relief from Bridges as to one grievance (JCCC 23-64, JCCC 23-68),[6] and that he attempted a grievance appeal (ARA 23-181) in August 2023 but did not properly file it. Dkt. 24 at 26-33, 38-40; Dkt. 58 at 15-17. This evidence duplicates some evidence submitted by Defendants and does not controvert Defendants' evidence showing that Barnett failed to properly exhaust any claims through the grievance process. On this record, the Court finds that the Defendants met their

---

[6] In his response, Barnett references a "grievance" he filed to complain about Adams allegedly opening and reading his legal mail and alleges the special report is "biased" because it omits this grievance. *See* Dkt. 58 at 2 ("It is interesting to note that the grievance I filed against Tracy Adams was never answered."); *id.* at 3-4 (asserting that Hodgson and Bridges "threatened to move [him] off preferred living if [he] did not withdraw [his] grievance" and carried out the threat); *id.* at 13 (asserting the special report is "biased" because it "did not include a copy of the grievance [he] filed against Defendant Adams" that "was never addressed"); *id.* at 19 ("Where is the grievance I filed and why did it disappear?"). But Barnett also did not submit a copy of the alleged grievance against Adams that he describes. Dkts. 24 and 58, generally. In their reply, Defendants assert "[t]here is no record of [Barnett] filing a proper grievance against Adams." Dkt. 59 at 2. The Court takes judicial notice that Barnett submitted in this case, as a supplement to his original complaint, an RTS, received by the JCCC law library on May 23, 2023, that does not mention Adams but complains of "the mail room" opening and reading Barnett's "confidential privileged legal mail" and not timely sending out legal mail. Dkt. 4 at 2. Assuming this is the document Barnett refers to as the "grievance" he filed against Adams, this is not a grievance but an RTS. Neither this RTS nor any document in the summary judgment record shows that Barnett filed a grievance or a grievance appeal to complain about Adams opening or reading his legal mail.

initial burden to show that Barnett did not exhaust available administrative remedies as to any claims he asserts in the amended complaint.

The Court further finds that Barnett has not met his burden to show that administrative remedies were unavailable to him. *See May*, 929 F.3d at 1234 ("Although a defendant bears the burden of 'proving that the plaintiff did not [exhaust his] administrative remedies,' once the defendant has carried that burden, 'the onus falls on the plaintiff to show that remedies were unavailable to him.'" (alteration in original) (quoting *Tuckel*, 660 F.3d at 1254)); *Hutchinson*, 105 F.3d at 564 (noting that plaintiff's burden is to "demonstrate with specificity the existence of a disputed material fact" to avoid summary judgment on the issue of exhaustion). Barnett states, in his verified amended complaint, (1) that "[t]he prison retaliates anytime [he] file[s] an RTS," Dkt. 24 at 5; that his case manager, Lisa Meyer, "encouraged [him] to file" an RTS about Adams alleged mishandling of his legal mail in May 2023, and that he filed an RTS, *id.* at 13-14; that he told a friend in a May 2023 email that he "was exhausting administrative remedies," *id.* at 14; that "after [he] was threatened by Bridges and [Hodgson]" for expressing personal opinions about Adams in the May 2023 emails, he was "too scared to do anything," *id.* at 15-17; that the actions of Bridges and Hodgson "chilled [his] ability" to "file a[n] [RTS] so [his] grievances may be redressed," *id.* at 17; that Bridges and Hodgson "targeted" him because he is gay and "retaliated against" him because he made "private comments via email" about Adams, *id.* at 18-19; that he filed an RTS complaining about Miller yelling at him in the library and denying him library time and obtained relief by filing a grievance, *id.* at 20; that Miller retaliated against him for filing the grievance by telling other inmates about his grievance, *id.* at 20, 22; that he "complained via RTS" about other inmates charging inmates to use the law library computer, *id.* at 21; that Davis denied him access to the courts when he filed an RTS, *id.* at 21-22; that Bridges directed prison staff to "shake down"

8

the cells of Barnett and one other inmate because both inmates were suspected of doing legal work for other inmates, *id.* at 24; that he filed a grievance, and Bridges returned it to him, *id.*; that he "sent a grievance to the ARA on regular paper because [an inmate law clerk] would not give [Barnett] the proper form, *id.*; that all allegations in the amended complaint prove that he is "being treated differently because [he] filed grievances and RTSs," *id.* at 25; and that he "filed a grievance against Jody Miller and Jody Miller answered it," *id.*

Even assuming Barnett's verified amended complaint satisfies the standards set out in Rule 56(c)(4), its "conclusory and self-serving" assertions of fear and retaliation are not sufficient to defeat summary judgment on the issue of exhaustion. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) ("Affidavits or other evidence offered by a nonmovant must create a genuine issue for trial; viewing the evidence in the light most favorable to the nonmovant, it is not enough that the evidence be 'merely colorable' or anything short of 'significantly probative.'" (citation omitted)); *see also Escobar v. Mora*, 496 F. App'x 806, 809 (10th Cir. 2012)[7] (affirming dismissal of unexhausted claims when plaintiff "generally complain[ed] that he faced threats of retaliation for using the grievance process"); *Tuckel*, 660 F.3d at 1254 ("Only threats that are sufficiently serious and retaliatory acts that are severe enough to deter a reasonable inmate will result in an administrative remedy becoming unavailable for PLRA purposes."). Barnett's own statements and other evidence in the summary judgment record submitted by Barnett and Defendants show not only that administrative remedies were available to Barnett, but also that he routinely submitted RTSs and filed grievances (in at least one instance successfully through a favorable grievance decision) before and after Defendants allegedly threatened, intimidated, and retaliated against him

---

[7] The Court cites this unpublished decision as persuasive authority. Fed. R. App. P. 32.1; 10th Cir. 32.1.

for filing RTSs and grievances or otherwise "chilled his ability" or made him "too scared" to utilize the grievance process. On the record presented, Barnett has not met his burden to show that administrative remedies were unavailable to him. *See Tuckel*, 660 F.3d at 1254 (holding that a prisoner attempting to show that administrative remedies were unavailable "must make two showings: (1) that the threat or intimidation actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the prison administrative process; and (2) that the threat or intimidation would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the prison administrative process that the inmate failed to exhaust").

### III. Conclusion

Because no reasonable juror could find in Barnett's favor on the issue of PLRA exhaustion, the Court concludes that Defendants are entitled to judgment as a matter of law on that issue. The Court therefore grants Defendants' request for summary judgment on the affirmative defense that 42 U.S.C. § 1997e(a)'s exhaustion requirement bars relief as to all claims in the amended complaint; dismisses without prejudice the amended complaint;[8] and denies as moot Defendants' request to dismiss the amended complaint on other grounds for dismissal identified in the motion. The Court further concludes that imposing a sanction against Barnett beyond the dismissal of this civil action is unnecessary and thus denies Defendants' request for attorney's fees.

**IT IS THEREFORE ORDERED** that:

1. Defendants' motion to dismiss (Dkt. 52) is: (a) construed in part as a motion for summary judgment and is **granted in part**, as to Defendants' request for summary

---

[8] *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice." (emphasis in original)).

    judgment on the affirmative defense that 42 U.S.C. § 1997e(a)'s exhaustion requirement bars relief as to all claims asserted in the amended complaint; (b) construed in part as a motion to dismiss and is **denied as moot in part**, as to all other asserted grounds for dismissal; and (c) construed in part as a motion for attorney's fees and is **denied in part**, as to that request;

2. Barnett's amended complaint (Dkt. 24) is **dismissed without prejudice**, for failure to exhaust available administrative remedies;

3. Barnett's motion for entry of scheduling order (Dkt. 79) is **dismissed as moot**;

4. this is a final order terminating this action; and

5. a separate judgment shall be entered herewith.

**DATED** this 28th day of March, 2025.

*[Signature]*
GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE